UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CARLOS JESUS MORAO QUERO,

Petitioner,

v.

CHRISTOPHER J. LAROSE, Warden, Otay Mesa Detention Center, et al.,

Respondents.

Case No.:  3:26-cv-03478-RBM-AHG

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**[Doc. 1]**

Pending before the Court is Petitioner Carlos Jesus Morao Quero's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 challenging the lawfulness of his detention by United States Immigration and Customs Enforcement. (Doc. 1.)  For the reasons below, the Court **GRANTS** the Petition.

## I.    BACKGROUND

Petitioner is a citizen of Venezuela who entered the United States on or about May 15, 2024 "through a government-authorized parole program."  (*Id.* ¶ 4.)  The Department of Homeland Security ("DHS") granted Petitioner parole under 8 U.S.C. § 1182(d)(5), valid until June 12, 2025.  (Doc. 4 at 2.)  Following that grant of parole, Petitioner entered the United States, where he has resided continuously since, complied with all parole conditions, filed an application for asylum, received employment authorization, married a United States citizen, and had a Form I-130 petition filed on his behalf.  (Doc. 1 ¶ 5.)

1

On April 1, 2025, Petitioner received notice from DHS that his parole would be terminated on April 24, 2025.  (Doc. 4-2 at 2 ("Effective March 25, 2025, [DHS] has exercised its discretion to terminate the categorical parole programs for [noncitizens] who are nationals of Cuba, Haiti, Nicaragua, and Venezuela . . . .  Your parole will terminate upon the earlier of (1) your original parole expiration date or (2) April 24, 2025.").)  On or about May 1, 2026, Petitioner was arrested by ICE in Florida and then transferred to Otay Mesa Detention Center, where he remains.  (Doc. 1 ¶ 6.)  On May 14, 2026, Petitioner requested a custody redetermination hearing before an immigration judge.  (Doc. 4 at 2; Doc. 4-5 at 2.)  The immigration judge denied the request, finding that he lacked jurisdiction. (Doc. 4-5 at 2.)  Petitioner did not appeal the adverse bond decision.  (*Id.*)

On June 10, 2026, Petitioner filed his Petition.  (Doc. 1.)  The Court set a briefing schedule that same day.  (Doc. 2.)  Respondents filed their Return to Habeas Petition on June 16, 2026.  (Doc. 4.)  Petitioner filed his Traverse to Respondents' Return later that same day.  (Doc. 5.)

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a).  The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.   DISCUSSION

Petitioner argues that his detention violates the Fifth Amendment's Due Process Clause and the Administrative Procedure Act.  (Doc. 1 ¶¶ 53–66.)  He seeks immediate release or a prompt § 1226(a) bond hearing.  (*Id.*, Prayer for Relief.)  Respondents argue

that: (1) Petitioner's claims are jurisdictionally barred by 8 U.S.C. §§ 1252(g) and 1252(b)(9); (2) Petitioner must first exhaust administrative remedies; and (3) Petitioner is mandatorily detained under 8 U.S.C. § 1225(b).  (Doc. 4 at 3–6.)

**A.    Jurisdiction**

Respondents argue that the Court lacks jurisdiction under 8 U.S.C. § 1252(g) because the Petition challenges a decision by the Attorney General to "commence proceedings, adjudicate cases, or execute removal orders" and under 8 U.S.C. § 1252(b)(9) because the Petition raises a question "arising from any action taken or proceeding brought to remove [a noncitizen] from the United States."  (Doc. 4 at 3–4.)  The Court has frequently rejected these same arguments, *see Perez v. LaRose*, Case No.: 3:25-cv-02620-RBM-JLB, 2025 WL 3171742, at *2–3 (S.D. Cal. Nov. 13, 2025), and does so again here for the same reasons.  The Court may properly exercise jurisdiction over Petitioner's claims.  *Accord United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (noting a "district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question . . . forms the backdrop against which the Attorney General will later exercise discretionary authority").

**B.    Exhaustion**

Respondents also argue that the Court should deny the Petition for failure to exhaust administrative remedies. (Doc. 4 at 4.)  As the Court has previously noted, it "may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (cleaned up).  "The Court, following other courts in this District, finds that exhaustion would be futile because the [BIA] is obligated to apply the binding precedent of *Matter of Yajure Hurtado*, 29 I & N. Dec. 216 (BIA 2025) to find that detention is mandatory under 8 U.S.C. § 1225(b)(2)." *Esquivel-Ipina v. LaRose*, Case No.: 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *3–4 (S.D. Cal. Oct. 24, 2025).  Moreover, Petitioner challenges his arrest and detention as unconstitutional; even if he were to appeal

to the BIA, that appeal would not offer adequate relief. *See Sarr v. Casey*, Case No.: 3:26-cv-02343-RBM-MSB, 2026 WL 1419635, at *3 (S.D. Cal. May 20, 2026) ("Any appeal Petitioner would make to the BIA would only be a review of the determination by the IJ at the bond hearing and would not address the propriety of Petitioner's detention, which concerns the constitutionality of an agency action prior to the bond hearing.").

## C.    Due Process

At the outset, the Court notes that it has granted several habeas petitions filed by similarly situated petitioners who were paroled into the United States under 8 U.S.C. § 1182(d)(5) and later detained. *See Sarr*, 2026 WL 1419635; *Perez*, 2025 WL 3171742; *Velasquez-Chinga v. Noem*, Case No.: 3:26-cv-00105-RBM-KSC, 2026 WL 311507 (S.D. Cal. Feb. 5, 2026). For example, in *Perez*, the Court applied the due process inquiry in *Mathews v. Eldridge*, 424 U.S. 319 (1976) and found that "all three factors support[ed] a finding that Respondents' revocation of [the petitioner's] parole without reasoning or an opportunity to be heard deprived [the petitioner] of his due process rights." 2025 WL 3171742, at *5. The Court concluded that revocation of the petitioner's parole violated the Due Process Clause and rendered his detention unlawful. *Id.* The Court reached the same conclusion in *Velasquez-Chinga*, finding that revocation of the petitioner's parole without an individualized determination or an opportunity to be heard "was neither consistent with 8 U.S.C. §1182(d)(5)(A) nor the demands of due process." 2026 WL 311507, at *3 (citation omitted).

To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court applies the three-part test established in *Mathews*, 424 U.S. at 335. The Court must consider: (1) "the private interest that will be affected by the official action;" (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

4

The Court finds that all three factors support a finding that Respondents' revocation of Petitioner's parole without reasoning or an opportunity to be heard deprived Petitioner of his due process rights.  First, Petitioner has a significant liberty interest in remaining out of custody pursuant to his parole.  *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."); *Pinchi*, 792 F. Supp. 3d at 1034 ("[The petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [the petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria.").  Here, like the petitioners in *Perez* and *Velasquez-Chinga*, Petitioner was detained after having resided in the United States for over a year.  (*See* Doc. 1 ¶¶ 4, 6.)  In that time, he complied with all parole conditions, filed an application for asylum, received employment authorization, married a United States citizen, and had a Form I-130 petition filed on his behalf.  (*Id.* ¶ 5.)

"Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing [him] a reason for revocation or giving [him] an opportunity to be heard." *Gonzalez Salazar v. Casey*, Case No.: 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025); *see also Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (finding where, as here, Petitioner "has not received any bond or custody redetermination hearing," the "risk of an erroneous deprivation of liberty is high.").  Civil immigration detention is permissible only to prevent flight or protect against danger to the community. *Zadvydas*, 533 U.S. at 690.  Here, there is no evidence that Petitioner's detention would serve either purpose. "Since DHS's initial determination that Petitioner should be paroled because [he] posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed." *Id.* (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) (noting that a grant of parole "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.").

3:26-cv-03478-RBM-AHG

Third, Respondents' interest in detaining Petitioner without reasoning or a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest."); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [the petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). "Therefore, because Respondents detained Petitioner by revoking [his] parole in violation of the Due Process Clause, [his] detention is unlawful." *Gonzalez Salazar*, 2025 WL 3063629, at *5; *accord Alvarado v. Warden*, Case No. 1:26-cv-02749-JLT-SKO, 2026 WL 1179739, at *1–3 (E.D. Cal. Apr. 30, 2026) (granting petition and ordering immediate release because the petitioner, a Venezuelan citizen who also had his parole terminated, did not receive a pre-deprivation hearing) (collecting cases).

Based on the above, the Court finds that Petitioner's detention without a pre-deprivation hearing violates due process. The Court also finds that immediate release, rather than a bond hearing, is the appropriate remedy. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021) ("if Petitioner is detained, he will already have suffered the injury he is now seeking to avoid").

## IV.    CONCLUSION[1]

For the foregoing reasons, the Petition is **GRANTED**. Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody,

---

[1] In light of the disposition herein, the Court declines to address the Petition's remaining grounds for relief.

3:26-cv-03478-RBM-AHG

subject to the conditions of his preexisting parole.

2. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner shall receive a hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) to determine whether detention is warranted.  The Government shall bear the burden of establishing, by clear and convincing evidence,[2] that Petitioner poses a danger to the community or a risk of flight.[3]

**IT IS SO ORDERED.**

DATE:  June 25, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[2] *See Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1095 (S.D. Cal. 2025) ("Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents must justify her continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released.") (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018) (explaining that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond").

[3] This relief has been granted in similar matters.  *See E.A. T.-B*, 795 F. Supp. 3d at 1324; *Duong v. Kaiser*, 800 F. Supp. 3d 1030, 1043–44 (N.D. Cal. 2025); *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1119–20 (E.D. Cal. 2025).

3:26-cv-03478-RBM-AHG